# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT of COLORADO

| | |
|---|---|
| (1)  J. ALAN KONECNY | § |
|           Plaintiff, | § |
| vs. | § |
| | § |
| (2)    EXPERIAN | § |
| (3)    EXPERIAN PLC | § |
| (4)    EXPERIAN INFORMATION SOLUTIONS | § |
| (5)    CONSUMERINFO.COM | § |
| (6)    MIKE RODGERS | § |
| (7)    BRIAN CASSIN | § |
| (8)    DARRYL GIBSON | § |
| (9)    TY TAYLOR | § |
| (10)   JENNIFER SCHULZ | § |
| | § |
|            Defendants. | § |
| | § |

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*4:39 pm, Dec 06, 2023*
**JEFFREY P. COLWELL, CLERK**

Civil Case No. 23-CV-03
Demand For Jury Trial

## PLAINTIFF'S ORIGINAL COMPLAINT FOR CIVIL PENALTY, DECLARATORY AND INJUNCTIVE RELIEF, OTHER APPROPRIATE RELIEF, AND ORIGINAL PETITION FOR ENFORCEMENT AND FOR SANCTIONS

COMES NOW, J. Alan Konecny, Plaintiff, in the above-styled and numbered Cause, and presents this Complaint against Defendants and for cause of same would state the following:

### SUMMARY of ACTION

11. This is an interstate multiple-violation Federal Civil Action with Demand For Jury Trial on behalf of the Plaintiff.  This complaint is filed Pro Se by Plaintiff with outlined lawful expectations of this Court and Opposing Counsel as outlined herein. The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654. Amendment Seven to the United States Constitution was ratified on December 15, 1791, which protects the right for citizens to have a jury trial in federal court regarding civil cases, it also prohibits judges in these trials from overruling facts revealed by the jury.

12. The Crimes and Torts as outlined herein have been perpetrated against Plaintiff by Defendants to include, but not limited to:

    a.  **Violation of 15 USC 1681 And 15 USC 1692**

    b.  **Violation(s) of 18 U.S. Code § 1349 - Attempt and conspiracy**

        i.  With Tortious Interference of A Contract & Breach of Contract

    c.  **Violation(s) of The Civil Rights Act of 1964**

        1.  With Interstate Harassment In The Workplace

        2.  With Slander, Libel, Defamation of Character

        3.  Harassment is a form of credit discrimination that violates the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990, (ADA).

    d.  **Violation(s) of 42 U.S. Code ¬ß 12203 Americans With Disabilities Act of 1990**

        i.  With Slander, Libel, Defamation of Character

        ii.  Harassment is a form of credit discrimination that violates the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990, (ADA).

    e.  **Violation of Sarbanes-Oxley Act of 2002**

        **i.**  With Slander, Libel, Defamation of Character

    f.  **Violation of Dodd-Frank Wall Street Reform Act 2010**

    g.  **Violation of The Consumer Protection Act of 2010**

    h.  **Violation of Economic Security (CARES) Act of 2020**

    i.  **Violation of The Coronavirus Response And Consolidated Appropriations Act 2021**

    j.  **Violation Of Racketeer Influenced And Corrupt Organizations - 18 USC Section 1961-68** "Also known as racketeer influenced and corrupt organizations (RICO)," is one of the most sweeping statutes ever passed by congress, incorporating by reference 24 separate types of federal crimes and eight types of state felonies. While not creating a new type of

substantive crime, RICO declares that any individual committing any two of a variety of specified offenses is guilty of 'racketeering activity' and is subject to severe penalties.

    **i.**   A close scrutiny of RICO's language and legislative history shows that RICO proscribes specific activities rather than the status of being involved in organized crime.

    **ii.**  Two key elements necessary to obtaining a conviction under RICO are a 'pattern of racketeering activity' – which has been detailed in this Federal Complaint and the existence of an 'enterprise' with which the individual has some connection. Interpretation of these elements by the courts has broadened the scope of RICO to include even those acts which are so closely linked as to constitute a single transaction and to apply to illegal enterprises, **governmental units**, **foreign corporations, and individuals.**

    iii.  There are three penalties for violation of RICO, all of which may be used simultaneously. These include a significant financial penalty/ fine, imprisonment for no more than 20 years, and forfeiture of any interest acquired or maintained through violation of the statute. These penalties are severe, and in many cases exceed the penalties for the individual crimes underlying the RICO violation. Plaintiff seeks all possible restitution under RICO - to include the incarceration of these CRIMINAL DEFENDANTS for 19.9 years.

    iv.  RICO has provision for civil remedies and discovery modeled after antitrust laws that Plaintiff demands this Court provide total and complete access to all RICO provisions and civil remedies with <u>**unlimited DISCOVERY.**</u>

**k.**  **15 U.S. Code ¬ß 1681 - Congressional findings and statement of purpose U.S. Code Accuracy and fairness of credit reporting:**

    i. "The Congress makes the following findings": The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."

    ii. An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

    iii. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

    iv. There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

13. This is a multiple-violation multiple-complaint on behalf of PLAINTIFF who suffered from incorrect credit reporting or otherwise harmed by Defendant Experian ("Experian" or the "Company") between 1/01/01 and 4/10/23 (the "Period") against Experian and its senior officers to recover damages caused by Defendant's fraudulent scheme(s) which were designed to and did inflate the price of Experian stock, inflated Experian gross sales and inflated Experian net income while harming millions of consumers and PLAINTIFF with incorrect, defamatory, slanderous, libelous information for Experian senior officer's profit and Wall Street financial gains.  Defendants damaged the good reputation of people and Plaintiff while achieving record profits and record stock valuations while adjusting their credit reporting algorithms to intentionally place a disproportionate amount of expense through intentionally higher interest rates to comply with government agendas, agendas not Law or requested by, nor affirmed by the People… Political agendas that maliciously

use demographics, not legal under US Federal Law and State Law, to assign higher risk to low risk individuals to pander to legislative pressure and related legal pressure. Defendants must CEASE AND DESIST all actions described herein and all related negative actions against Plaintiff and all those similarly situated.

14. On or about December 31, 2021, Experian's stock price hit an all-time high, this all-time high stock price clearly documents Experian's profiting from irresponsible use of consumer data while Consumer's and Plaintiff suffered with lack of SBA loan relief and lack of income due to government forced shutdowns and political, judicial, and corporate corruption.

15. DEFENDANTS provided no way to correct incorrect credit information for Plaintiff, Defendants actively deny and denied Plaintiff relief from incorrect credit information.

16. **"Reasonable Procedures"** require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter. Defendants failed to adopt "REASONABLE PROCEDURES" for protecting Plaintiff and others from harm related to the Defendants miss-information reporting.

17. 15 U.S. Code § 1692 - Congressional findings and declaration of purpose

    a.  (a) Abusive practices

        i.  There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

    b.  (b) Inadequacy of laws

       i.  Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

18. In 2002, 2003, 2007, 2008, 2009, 2010, 2011, 2015, 2020 the United States economy suffered severe contractions because of well documented government and corporate corruption. Businesses were forced to shutter. Corporate employees and Small-business owners faced a dire struggle for survival. Defendants report this well documented recessions from government and corporate racketeering and collusion on Plaintiff's credit report(s).

19. The United States Consumer and the Plaintiff had no control to prevent the well documented corruption, additionally – "the Consumer" and this Plaintiff have the complete responsibility to correct the fraudulent credit problems through endless financial hardships, increased interest rates, denial of consumer loans, denial of credit cards, denial of employment, and denial of insurance all resulting from the intentional and commercialized harm perpetrated by the Defendants as acknowledged by 15 U.S. Code § 1692 - Congressional findings and asserted by this PLAINTIFF.

20. During the well documented corporate corruption of 2002, 2003, 2007, 2006, 2007, 2008, 2009, 2010, 2015, 2020, and 2023 cascading waves of business closures, bank closures, and layoffs caused the national unemployment rate to soar to 14.7% in 2020, its highest peak since the Great Depression. During the financial fallout, Congress stepped in to keep the economy on life support, specifically passing The CARES ACT on March 27, 2020. The Act, in part, created billions of dollars for small business programs for small businesses although Plaintiff and US other Business Owners were denied "qualified" and "approved" United States Small Business Administration (SBA) loans based on Defendant's corrupt business scheme and Experian's incorrect credit reporting facilities.

21. Congress established the Economic Injury Disaster Loan (EIDL) program through CARES Act and to help all businesses and other entities, including sole proprietorships and nonprofits, to help small businesses to continue to pay their bills and business liabilities.

    a. The CARES Act expressly provides that "any" business that satisfies the specified eligibility criteria relating to size "shall" be eligible for relief under the CARES Act 15 U.S.C. § 636(a)(36)(D).  AND, CFR Title 13, Chapter I, Part 134, Subpart A § 134.102 to also include:

        i. PART 112 - NONDISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS OF SBA - EFFECTUATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 Authority: Sec. 602, 78 Stat. 252 (42 U.S.C. 2000d-1)

        ii. PART 113 - NONDISCRIMINATION IN FINANCIAL ASSISTANCE PROGRAMS OF SBA - EFFECTUATION OF POLICIES OF FEDERAL GOVERNMENT AND SBA ADMINISTRATOR

        iii. PART 117 - NONDISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS OR ACTIVITIES OF SBA - EFFECTUATION OF THE AGE DISCRIMINATION ACT OF 1975, AS AMENDED

        iv. PART 136 - ENFORCEMENT OF NONDISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR ACTIVITIES CONDUCTED BY THE SMALL BUSINESS ADMINISTRATION Authority:29 U.S.C. 794. Source: 53 FR 19760, May 31, 1988, unless otherwise noted. Source: 30 FR 298, Jan. 9, 1965, unless otherwise noted.

22. However, the Small Business Administration ("SBA"), the agency responsible for administering the programs, thereafter, created exclusions that bar a broad swath of Business Owners with negative credit reporting i.e., negative credit reporting caused by endless corporate corruption, Pandemics and

Government forced shutdowns.  Negative credit reporting on Plaintiff's credit report was caused by

the SBA's slow, incorrect, aggressively biased decisions for relief distribution.

23. The Defendant's, in concert with the SBA, have continued to shift the terms of the credit-record

exclusions through various, inconsistent policy documents. But throughout it all, the Defendants and

the SBA has excluded eligible Consumers due to incorrect credit reporting and the absolute

reluctance of SBA employees to read and apply the credit exclusion notes and provide relief as

required by the CARES Act.  The credit-record exclusions are inconsistent with the text and purpose

of the CARES Act. They tell a sweeping category of Business Owners across the country that, at a

time of acute financial fragility, there is no relief for them.

24. The credit-record exclusions unlawfully and arbitrarily increase the already considerable barriers to

economic success faced by the 2 in 3 working-age Americans with credit records affected by the

endless forced recessions, pandemic, and Government failures. Even in a booming economy, people

with negative credit records experience unemployment at nearly five times the average rate because

of Experian reporting and related reporting companies.  Defying the odds already stacked against

them, many start their own small businesses because they are unable to obtain traditional

employment, and in turn create jobs for other people with credit records who have historically been

excluded from the workforce. In the current economic climate, these individuals and their

communities face financial devastation commercialized by the Defendants.

25. Experian's and SBA's credit-record exclusions have also exacerbated the 2020 pandemic's

disproportionate health and economic impacts on small business owners. The Defendants and SBA

violated the Administrative Procedure Act ("APA") [The Administrative Procedure Act (APA),

Pub.L. 79–404, 60 Stat. 237, enacted June 11, 1946, is the United States federal statute that governs

the way in which administrative agencies of the federal government of the United States may

propose and establish regulations and grants U.S. federal courts oversight over all agency actions

and must recognize the Defendants and SBA impose additional eligibility requirements for funds contrary to the CARES Act.

26. The credit-record exclusions also violate the APA because they are arbitrary and capricious. Experian and the SBA have repeatedly, in concert, changed the scope of the credit-record exclusions without explanation or notice. These constant shifts and inconsistencies in criteria have altered the eligibility of business owners as the deadlines closed, depriving them of the opportunity to apply for loans and all relief provided by the CARES Act.

27. This lawsuit asks the Court to declare the use of uncontrollable-consumer-financial-data unlawful. Defendant's use data related to Consumer's and Plaintiff's uncontrollable financial destruction as reason for denial of SBA Relief Loans creating pandemic-related-negative-credit-records and recession-related-negative-credit reporting with devastating financial consequences for Consumers, Business Owners, and the Plaintiff.

28. This is a Federal Complaint against Experian plc and its senior officers, officers, offending employees, contractors, representatives, and associates to recover for damages caused by Defendants' fraudulent financial discrimination schemes, improper handling of Plaintiff's financial records and refusal to properly process Plaintiff's requests to correct information on his credit report for EMERGENCY PANDEMIC RELEIF the U.S. Government was offering through the SBA.

29. The Defendants violated The Coronavirus Aid, Relief, and Economic Security (CARES) Act (2020) and the Coronavirus Response and Consolidated Appropriations Act (2021) and the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) and 15 U.S. Code Chapter 116 - CORONAVIRUS ECONOMIC STABILIZATION (CARES ACT).

30. These Defendants are liable pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 U.S. Code § 1369 – Multiparty, multi-forum jurisdiction.

31. Plaintiff suffered palpable race, age, and sex discrimination by SBA staff and SBA contractors, as they used Experian's incorrect data to validate the attacks and to validate the SBA's refusal to provide the Plaintiff lawful pandemic relief.

32. Defendants failed to train their new and existing employees / representatives Federal Discrimination Laws, Federal "Cares" Act Law, and Defendant's failed to train Experian employees, representatives, and contractors responsible communication standards for Disabled Veterans.

33. The acts giving rise to the violations are Federal Civil-Rights violations, Federal Cares Act violations, Federal Americans With Disabilities Act violations and these Defendants are liable pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 USC Section 139 and 28 U.S. Code § 1369 and 42 U.S. Code § 1395 And Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. § 2000d.

34. Plaintiff continues to suffer from massive financial injuries related to Defendant's intentional malicious mistreatment of Plaintiff. Plaintiff has been financially devastated by Experian's significantly monetized, intentional-commercialized-consumer-mistreatment (ICCM).

## JURISDICTION AND VENUE

11. The FEDERAL QUESTION has been satisfied to file this complaint in Federal Court. Plaintiff may file this lawsuit in federal court because the case is based on violations of federal law. 28 U.S.C. ¬ß 1331.

12. Jurisdiction is proper in this Court under:

    a. Rule 8(a), F.R.Cy.P. and 28 U.S.C. § 1331, 1345, 1348, 1361, and 1441. This Court has remedial authority pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

    b. FEDERAL JURISDICTION exists pursuant to federal venue statute, 28 U.S. Code ¬ß 1391 as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, a substantial part of property that is the subject of the action is situated.

13. Venue is proper pursuant to:

    a.  28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred here.

14. This Court has remedial authority pursuant to 28 USC Section 139 and 28 U.S. Code § 1369 and Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. § 2000d.

15. The acts giving rise to the violations are Federal Civil Rights violations, Federal Americans With Disabilities Act violations, and These Defendants are liable pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 USC Section 139 and 28 U.S. Code § 1369 and 42 U.S. Code § 1395 And Title VI of The Civil Rights Act of 1964 Title VI, 42 U.S.C. § 2000d.

16. The 14th Amendment's guarantee of due process doesn't create a constitutional right to engage in prostitution, the U.S. Court of Appeals for the Ninth Circuit ruled in 2019. Prostitution also is not commercial speech and is NOT protected under the Constitution.

17. The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654.

18. The "FEDERAL QUESTION" has been satisfied. The law involved is the United States Constitution and statutes passed by Congress.

19. Because this lawsuit is based on violations of Federal Law, it does not matter how much or how little Plaintiff claims in damages, although Plaintiff's actual financial losses, before damages, time, and restitution is awarded, exceed $100,000 USD.

20. This is, also, a "federal question" case because there are federal laws that prohibit employment discrimination and harassment based on race, age, sex, religion, or national origin [42 U.S.C. ¬ß 2000(e)].

21. Plaintiff has exhausted all administrative remedies with the United States

22. DIVERSITY of CITIZENSHIP has been proven by Plaintiff.

23. This lawsuit may be filed in the U.S. federal court system because the case is between citizens of different states. 28 U.S.C. ¬ß 1332. A "diversity of citizenship" case.

24. This case is based on a violation of federal law, Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

25. Jurisdiction is proper in this Court under 28 U.S.C. ¬ß 1331. The Court has remedial authority pursuant to 28 U.S.C. ¬ß 1361, 28 U.S.C. ¬ß 2201, and 5 U.S.C. ¬ß 702.

26.  Venue is proper pursuant to 28 U.S.C. ¬ß 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in many Districts / many States / and many Countries.

27. FEDERAL JURISDICTION exists pursuant to ¬ß federal venue statute, 28 U.S. Code ¬ß 1391 and 28 USC Section 139 and 28 U.S. Code ¬ß 1369 and Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. ¬ß 2000d and Federal / Constitutional Law.

28. Moral Turpitude (Moral turpitude means conduct that is wrong in itself even if no statute were to prohibit the conduct)

29. The acts giving rise to the violations are Federal Civil Rights violations, Federal Americans With Disabilities Act violations, Tortious Interference of a Contract, Slander, Libel, Defamation and these Defendants are liable pursuant to federal venue statute, 28 U.S. Code ¬ß 1391 and 28 USC Section 139 and 28 U.S. Code ¬ß 1369 and 42 U.S. Code ¬ß 1395 And Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. ¬ß 2000d.

30. Constitutional Amendments – Amendment 7 – "The Right to Jury Trial in Civil Affairs" Amendment Seven to the Constitution was ratified on December 15, 1791. It protects the right for citizens to have a jury trial in federal courts with civil cases.

31. Jurisdiction is proper in this Court under 28 U.S.C. § 1331. The Court has remedial authority pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702. Venue is proper pursuant to

28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

35. FEDERAL JURISDICTION exists pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 USC Section 139 and 28 U.S. Code § 1369 and The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. § 2000d.

36. The acts giving rise to the violations are Federal Civil Rights violations, Federal Americans With Disabilities Act violations and These Defendants are liable pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 USC Section 139 and 28 U.S. Code § 1369 and 42 U.S. Code § 1395 And Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. § 2000d.

37. The CARES Act expressly provides that "any" business that satisfies the specified eligibility criteria relating to size "shall" be eligible for relief under the CARES Act 15 U.S.C. § 636(a)(36)(D).  AND, CFR Title 13, Chapter I, Part 134, Subpart A § 134.102 to also include:

    v.  PART 112 - NONDISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS OF SBA - EFFECTUATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 Authority: Sec. 602, 78 Stat. 252 (42 U.S.C. 2000d-1)

    vi.  PART 113 - NONDISCRIMINATION IN FINANCIAL ASSISTANCE PROGRAMS OF SBA - EFFECTUATION OF POLICIES OF FEDERAL GOVERNMENT AND SBA ADMINISTRATOR

    vii.  PART 117 - NONDISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS OR ACTIVITIES OF SBA - EFFECTUATION OF THE AGE DISCRIMINATION ACT OF 1975, AS AMENDED

    viii.  PART 136 - ENFORCEMENT OF NONDISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR ACTIVITIES CONDUCTED BY THE SMALL BUSINESS ADMINISTRATION Authority:29 U.S.C. 794. Source: 53

FR 19760, May 31, 1988, unless otherwise noted. Source: 30 FR 298, Jan. 9, 1965, unless otherwise noted

38. The acts giving rise to the violations caused expense, legal fees, and actual loss of income and loss of prior business investment and related contracts exceeding $2,597,825 before damages, pain, suffering, and the Federal Civil Violations and Federal Civil Rights violations are assessed and monetized.

## THE PARTIES

32. **Plaintiff**, J Alan Konecny is the Founder / Owner of Brand Development Partners, a disabled USCG Veteran owned Colorado USA based specialty-food brand development company.

    1.  125 W Virginia Ave #265 Gunnison CO 81230

    2.  970-452-9378

    3.  alan@branddevelopmentpartners.com

33. **Defendants:**

    a.  **DEFENDANT EXPERIAN** "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000 and "Operational Headquarters" as "Experian, The Sir John Peace Building, Experian Way, NG2 Business Park, Nottingham NG80 1ZZ United Kingdom Telephone +44 (0) 115 941 0888, fax +44 (0) 115 828 6431 and Experian 475 Anton Blvd, Costa Mesa, CA 92626 (1) 714-830-7000, and Serasa Experian, Av. Doutor Heitor, Jose Reali 360, CEP 13571-385, Sao Carlos, Brazil, Telephone +55 11 3004 7728

    b.  **EXPERIAN PLC** North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000 and "Operational Headquarters" as "Experian, The Sir John Peace Building, Experian Way, NG2 Business Park, Nottingham NG80 1ZZ United Kingdom Telephone +44 (0) 115 941 0888, fax +44 (0) 115 828 6431 and Experian 475 Anton Blvd, Costa Mesa, CA 92626 (1) 714-830-7000, and Serasa

Experian, Av. Doutor Heitor, Jose Reali 360, CEP 13571-385, Sao Carlos, Brazil, Telephone +55 11 3004 7728

c. **EXPERIAN INFORMATION SOLUTIONS** North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000 and "Operational Headquarters" as "Experian, The Sir John Peace Building, Experian Way, NG2 Business Park, Nottingham NG80 1ZZ United Kingdom Telephone +44 (0) 115 941 0888, fax +44 (0) 115 828 6431 and Experian 475 Anton Blvd, Costa Mesa, CA 92626 (1) 714-830-7000, and Serasa Experian, Av. Doutor Heitor, Jose Reali 360, CEP 13571-385, Sao Carlos, Brazil, Telephone +55 11 3004 7728

d. **CONSUMERINFO.COM** North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000 and "Operational Headquarters" as "Experian, The Sir John Peace Building, Experian Way, NG2 Business Park, Nottingham NG80 1ZZ United Kingdom Telephone +44 (0) 115 941 0888, fax +44 (0) 115 828 6431 and Experian 475 Anton Blvd, Costa Mesa, CA 92626 (1) 714-830-7000, and Serasa Experian, Av. Doutor Heitor, Jose Reali 360, CEP 13571-385, Sao Carlos, Brazil, Telephone +55 11 3004 7728

e. **DEFENDANT MIKE RODGERS** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

f. Defendant Mr. Brian Cassin at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

g. **BRIAN CASSIN** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

h. **DEFENDANT DARRYL GIBSON** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

i. **TY TAYLOR** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

j. **JENNIFER SCHULZ** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

k. **DEFENDANT TY TAYLOR** at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

  i. Defendant Jennifer Shulz at Experian "North American Headquarters" is located, according to Experian.com, 475 Anton Blvd Costa Mesa, CA 92626 Telephone (1) 714 830 7000

### OPPOSING COUNSEL CONDUCT EXPECTATIONS

34. The Plaintiff is asking all Counsel, opposing Counsel, Lawyers, legal aids, legal employees, and like professionals to follow the below "Best Practices and Rules of Civil Procedure" as outlined below and Plaintiff has expectations of opposing counsel to specifically follow the below Code of Conduct for and "Rules of Civil Procedure" as specifically outlined herein below:

a. QUOTE: "According to the *Colorado Faculty of Federal Advocates* and their <u>"Best Practices in Pro Se Party Litigation"</u> dated February 13, 2020, in conjunction with the ***Colorado Bar Association in coordination with the U.S. District Court for the District of Colorado":***

"Pro se litigation can be challenging for everyone involved. Pro se litigants are to be held to the same standards as lawyers but may struggle with the complexities of federal court litigation. Judges and opposing attorneys may struggle to find an appropriate balance between holding pro se parties accountable to applicable rules and procedure and affording them a measure of leeway since they are unrepresented. This panel will offer perspectives from all sides and insight into best practices for giving these cases their best opportunity to move forward as smoothly as possible."

"The notion of zealous advocacy by lawyers / legal professionals are premised on the idea that both sides are well represented. See, e.g., Colo. RPC Preamble, para. 8 ("A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same

time assume that justice is being done."). Not only are pro se parties unrepresented, almost all lack meaningful access to representation."

"In addition to fulfilling all one's ethical duties (e.g., candor toward the tribunal and truthfulness), reasonableness is a good guiding principle when deciding what positions to take before the court. (10th Cir. 1991). But it is improper for the court to assume the role of advocate for the pro se litigant."

"Despite the liberal construction afforded pro se pleadings, courts will not construct arguments or theories for a pro se party by supplying additional facts or constructing legal theories that assume facts never pleaded. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990)."

"Pro se litigants should be afforded deference in the form of "occasional allowances by the court for honest mistakes [which] provide leeway for plaintiffs who are not trained in the law and do not have representation. This deference, though, should be balanced with potential abuse ... and constant delays in the judicial system." Brewer v. DKD Elec. Co., "Civ. No. 02-0407 LH/RLP, 2004 WL 6218811, at *2–3 (D.N.M. June 14, 2004); see also Wallin v. Sygma Network, No. 18-cv-01097-DDD-SKC, 2019 WL 6702066 (D. Colo. Nov. 18, 2019), report and recommendation adopted, No. 18-cv-01097-DDD-SKC, 2019 WL 6700434 (D. Colo. Dec. 9, 2019)."

"Most pro se litigants are intimidated by lawyers. Be kind. Be patient. As officers of the court and of the legal system, lawyers have an affirmative obligation to treat pro se litigants (and all litigants) with respect and professionalism. See, e.g., Colorado Rules of Professional Conduct."
"You're (The lawyer's) role as counsel of record and as an officer of the court is to manage litigation in a manner "to secure the just, speedy, and inexpensive" determination of litigation. Fed. R. Civ. P.1."
"Traditional" litigation and discovery tactics may be unnecessary and less effective with a pro se litigant and may only serve to exacerbate issues in the case."

"Avoid overuse of legalese. Using words a layperson can understand may aid the pro se litigant's understanding of your arguments and the pertinent issues, and could lead to a more focused and coherent response from the pro se litigant. This benefits everyone."

"File a response to a pro se litigant's paper even if you're not sure how to respond. Your response might simply be to tell the court that you're uncertain of how to construe the filing, or that you don't believe the filing requires a response, but nevertheless you oppose the relief sought. No response may confuse the pro se litigant into believing she prevailed because no response was filed. Also, without a response the motion may fall through the cracks if the court is waiting on a response before taking up the matter."

"Request a status conference with the court whenever things seem to be going south. These conferences afford the court an opportunity to explain things to the pro se litigant and reset and reiterate expectations, obligations, and requirements.

"A pro se litigant's pleadings should be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. Hall v. Bellmon, 935 F.2d 1106".

"Don't shy away from trying to settle these cases with the assistance of a third- party. Pro se litigants may start with highly unrealistic expectations of what a victory or settlement should look like. A third-party can reset those expectations with a dose of reality that aids in settling the case."

"Don't construe the several chances a court might afford a pro se litigant as the court favoring that party or advocating for them. With the significant challenges pro se litigants face, some judges may make decisions to ensure that these litigants get a fair opportunity to present their case so that justice might be done. But all judges have their limits in affording such leeway. See, supra"

"Colorado Rules of Professional Conduct Implicated In Pro Se Litigation Rules of Prof.Cond., Rule 4.1" Rule 4.1. Truthfulness In Statements To Others
In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6"

"RULE 4.3. DEALING WITH UNREPRESENTED PERSON Effective: December 1, 2019
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

"RULE 4.4. RESPECT FOR RIGHTS of THIRD PERSONS Effective: December 1, 2019
(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."
"Rules of Prof. Cond., Preamble PREAMBLE: A LAWYER'S RESPONSIBILITIES
A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.
With limited exceptions, the Colorado Rules of Professional Conduct have been adopted as standards of professional responsibility for the U.S. District Court and the U.S. Bankruptcy Court for the District of Colorado. See D.C.COLO.LAttyR 2."

"As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge

of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education."

"In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest."

"A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done.2 . . . Zealousness does not, under any circumstances, justify conduct that is unprofessional, discourteous, or uncivil toward any person involved in the legal system." "This is a curious statement because it suggests that caution is warranted to ensure justice is being done when an opposing party is not represented by counsel." (10th Cir. 1991). "But it is improper for the court to assume the role of advocate for the pro se litigant."Despite the liberal construction afforded pro se pleadings, courts will not construct arguments or theories for a pro se party by supplying additional facts or constructing legal theories that assume facts never pleaded. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990)."

"Pro se litigants should be afforded deference in the form of occasional allowances by the court for honest mistakes [which] provide leeway for plaintiffs who are not trained in the law and do not have representation. This deference, though, should be balanced with potential abuse ... and constant delays in the judicial system." Brewer v. DKD Elec. Co., Civ. No. 02-0407 LH/RLP, 2004 WL 6218811, at *2–3 (D.N.M. June 14, 2004); see also Wallin v. Sygma Network, No. 18-cv-01097-DDD-SKC, 2019 WL 6702066 (D. Colo. Nov. 18, 2019), report and recommendation adopted, No. 18-cv-01097-DDD-SKC, 2019 WL 6700434 (D. Colo. Dec. 9, 2019)." Be patient. As officers of the court and of the legal system, lawyers have an affirmative obligation to treat pro se litigants (and all litigants) with respect and professionalism. Colorado Rules of Professional Conduct."

"(The Lawyers) Your role as counsel of record and as an officer of the court is to manage litigation in a manner "to secure the just, speedy, and inexpensive" determination of litigation. Fed. R. Civ. P. 1.

"Traditional" litigation and discovery tactics may be unnecessary and less effective with a pro se litigant and may only serve to exacerbate issues in the case."

"Avoid overuse of legalese. Using words a layperson can understand may aid the pro se litigant's understanding of your arguments and the pertinent issues, and could lead to a more focused and coherent response from the pro se litigant. This benefits everyone."

"File a response to a pro se litigant's paper even if you're not sure how to respond. Your response might simply be to tell the court that you're uncertain of how to construe the filing, or that you don't believe the filing requires a response, but nevertheless you oppose the relief sought. No response may confuse the pro se litigant into believing she prevailed because no response was filed. Also, without a response the motion may fall through the cracks if the court is waiting on a response before taking up the matter."

"Request a status conference with the court whenever things seem to be going south. These conferences afford the court an opportunity to explain things to the pro se litigant and reset and reiterate expectations, obligations, and requirements. A pro se litigant's pleadings should be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. Hall v. Bellmon, 935 F.2d 1106, 4."

"Don't shy away from trying to settle these cases with the assistance of a third- party. Pro se litigants may start with highly unrealistic expectations of what a victory or settlement should look like. A third-party can reset those expectations with a dose of reality that aids in settling the case."

"Don't construe the several chances a court might afford a pro se litigant as the court favoring that party or advocating for them. With the significant challenges pro se litigants face, some judges may make decisions to ensure that these litigants get a fair opportunity to present their case so that justice might be done. But all judges have their limits in affording such leeway."

"Colorado Rules of Professional Conduct Implicated In Pro Se Litigation"
"In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

"DEALING WITH UNREPRESENTED PERSON Effective: December 1, 2019 In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

"Rules of Prof. Cond., Rule 4.4 RULE 4.4. RESPECT FOR RIGHTS of THIRD PERSONS Effective: December 1, 2019 In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

"Rules of Prof.Cond., Preamble PREAMBLE: A LAWYER'S RESPONSIBILITIE A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.
With limited exceptions, the Colorado Rules of Professional Conduct have been adopted as standards of professional responsibility for the U.S. District Court and the U.S. Bankruptcy Court for the District of Colorado. See D.C.COLO.LAttyR 2."

"As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest."

"A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. . . Zealousness does not, under any circumstances, justify conduct that is unprofessional, discourteous, or uncivil toward any person involved in the legal system. This is a curious statement because it suggests that caution is warranted to ensure justice is being done when an opposing party is not represented by counsel."
"Rule 8.2. Judicial and Legal officials Colorado Court Rules Colorado Rules of Professional Conduct Maintaining the Integrity of the Profession As amended through Rule Change 2018(6), effective April 12, 2018"

"A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer or of a candidate for election, or appointment to, or retention in, judicial or legal office."

"A lawyer who is a candidate for retention in judicial office shall comply with the applicable provisions of the Code of Judicial Conduct. History. Entire Appendix repealed and readopted April 12, 2007, effective January 1, 2008."

"Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public

legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice."

"When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity."

"To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized."

**Plaintiff has experienced 20 years of corruption and lawlessness when dealing with American lawyers, attorneys, and legal "professionals". Plaintiff will prosecute and endlessly litigate the smallest infractions of the above rules for lawyer conduct, without delay, without fail. A Class Action will be filed for all victims of bad lawyers, PRN.**

## JURDICIAL CONDUCT EXPECTATIONS

35. The Plaintiff is asking this Court and has expectations of this Court to specifically follow the below "Code of Conduct for United States Judges as specifically outlined in 5 Canons in the United States Judiciary Policy Code of Conduct for United States Judges" as defined in part herein below:

   a. "Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary"
   b. "Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities"
   c. "Canon 3: A Judge Should Perform the Duties of the office Fairly, Impartially and Diligently."
   d. "Canon 4: A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial office"
   e. "Canon 5: A Judge Should Refrain From Political Activity"

36. "The Code of Conduct for United States Judges was initially adopted by the Judicial Conference on April 5, 1973, and was known as the "Code of Judicial Conduct for United States Judges." See: JCUS-APR 73, pp. 9-11 forward questions concerning this Code and its applicability should be directed to the Chair of the Committee on Codes of Conduct by as follows: Chair, Committee on Codes of Conduct c/o General Counsel Administrative office of the United States Courts Thurgood Marshall Federal Judiciary Building One Columbus Circle, N.E. Washington, D.C. 20544 202-502-1100 Procedural questions may be addressed to: office of the General Counsel Administrative office of the United States Courts Thurgood

Marshall Federal Judiciary Building One Columbus Circle, N.E. Washington, D.C. 20544 202-502-1100"

a. **"Canon 1**: A Judge Should Uphold the Integrity and Independence of the Judiciary An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. According to the Guide to Judiciary Policy, Vol. 2A, Ch. 2 Page 3 Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn on their acting without fear or favor. Although judges should be independent, they must comply with the law and should comply with this Code. Adherence to this responsibility helps to maintain public confidence in the impartiality of the judiciary. Conversely, violation of this Code diminishes public confidence in the judiciary and injures our system of government under law." "The Canons are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions." "The Code is designed to provide guidance to judges and nominees for judicial office. It may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364). Not every violation of the Code should lead to disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the improper activity, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the restrictions in the Code are necessarily cast in general terms, and judges may reasonably differ in their interpretation. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the Code is not intended to be used for tactical advantage."

b. **"Canon 2**: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities Respect for Law. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Outside Influence. A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness. Nondiscriminatory Membership. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

According to the Guide to Judiciary Policy, Vol. 2A, Ch. 2 Page 4 Canon: An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code. Canon 2B. Testimony as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be perceived as an official testimonial. A judge should discourage a party from requiring the judge to testify as a character witness except in unusual circumstances when the demands of justice require. This Canon does not create a privilege against testifying in response to an official summons. A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others. For example, a judge should not use the judge's judicial position or title to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office. A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate communications to a sentencing judge or a probation or corrections officer but may provide information to such persons in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship. Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited."

c.  **"Canon 3**: A Judge Should Perform the Duties of the office Fairly, Impartially and Diligently The duties of judicial office take precedence over

all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:" "Adjudicative Responsibilities.: A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism." "A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings. (3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process. (4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." "A judge may: initiate, permit, or consider ex parte communications as authorized by law; when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters. A judge should dispose promptly of the business of the court. A judge should not make public comment on the merits of a matter pending or impending in any court. A judge should require similar restraint by court personnel subject to the judge's direction and control. The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education." "Administrative Responsibilities" "A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel. A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge." "A judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary

appointments, nepotism, and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered. "A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel. A judge should not retaliate against those who report misconduct. A judge should hold court personnel under the judge's direction to similar standards. "A judge with supervisory authority over other judges should take reasonable measures to ensure that they perform their duties timely and effectively. "A judge should take appropriate action upon receipt of reliable information indicating the likelihood that a judge's conduct contravened this Code, that a judicial employee's conduct contravened the Code of Conduct for Judicial Employees, or that a lawyer violated applicable rules of professional conduct. "Disqualification. A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: "The judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. "The judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding, the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is: a party to the proceeding, or an officer, director, or trustee of a party; acting as a lawyer in the proceeding; known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or to the judge's knowledge likely to be a material witness in the proceeding; the judge has served in governmental employment and in that capacity participated as a judge (in a previous judicial position) counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy." "A judge should keep informed about the judge's personal and fiduciary financial interests and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household. "A judge should neither engage in, nor tolerate, workplace conduct that is reasonably interpreted as harassment, abusive behavior, or retaliation for reporting such conduct. The duty to refrain from retaliation includes retaliation against former as well as current judiciary personnel. Under this Canon, harassment encompasses a range of conduct having no legitimate role in the workplace, including harassment that constitutes discrimination on impermissible grounds and other abusive, oppressive, or inappropriate conduct directed at judicial employees or others. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(2) (providing that "cognizable misconduct

includes: (A) engaging in unwanted, offensive, or abusive sexual conduct, including sexual harassment or assault; (B) treating litigants, attorneys, judicial employees, or others in a demonstrably egregious and hostile manner; or (C) creating a hostile work environment for judicial employees") and Rule 4(a)(3) (providing that "cognizable misconduct includes intentional discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age, or disability"). "Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct. Appropriate action depends on the circumstances, but the overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence. A judge, in deciding what action is appropriate, may take into account any request for confidentiality made by a person complaining of or reporting misconduct. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(6) (providing that "cognizable misconduct includes failing to call to the attention of the relevant chief district judge or chief circuit judge any reliable information reasonably likely to constitute judicial misconduct or disability. A judge who receives such reliable information shall respect a request for confidentiality but shall nonetheless disclose the information to the chief district judge or chief circuit judge, who shall also treat the information as confidential. Certain reliable information may be protected from disclosure by statute or rule. A judge's assurance of confidentiality must yield when there is reliable information of misconduct or disability that threatens the safety or security of any person or that is serious or egregious such that it threatens the integrity.

d. **"Canon 4**: A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial office. A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth in Canon 4.

e. **"Canon 5**: A Judge Should Refrain From Political Activity General Prohibitions. A judge should not: (1) act as a leader or hold any office in a political organization; (2) make speeches for a political organization or candidate, or publicly endorse or oppose a candidate for public office; or (3) solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate, or attend or purchase a ticket for a dinner or other event sponsored by a political organization or candidate. B. Resignation upon Candidacy. A judge should resign the judicial office if the judge becomes a candidate in a primary or general election for any office. C. Other Political Activity. A judge should not engage in any other political activity."

f.  **Plaintiff has experienced 20 years of corruption and lawlessness when dealing with politicians, judges, and legal "professionals".  Plaintiff will prosecute and endlessly litigate the smallest infractions of the above rules for Judicial conduct, without delay, without fail.**

## BACKGROUND

39. Plaintiff destroyed Fleming Companies in 2002.  K-Mart Corporation was destroyed as a result, i.e. collateral damage to the Fleming Class Action and Plaintiff's relentless "Deep Throat(ing)" financial facts to "The Dallas Morning News" and international press and the US SEC which were polar opposite of Fleming's and K-Mart's financial claims and SEC filings.  Plaintiff submits by reference FLEMING COMPANIES, INC. CLASS ACTION 2002 United States District Court Eastern District of Texas Texarkana Division which resulted in the complete destruction of the 75-year-old publicly traded company after 9 months of employment with Fleming Companies, by this Plaintiff.

40. Plaintiff to this Cause wrote a considerable portion of the Federal Complaint as the crimes and torts were complicated and specific and verifiably lead to the complete destruction of the largest food /CPG distributor in North America – and ultimately lead to the, Defendants of the referenced Federal Class Actions retaliating against the Plaintiff to this styled and numbered Cause, violating Sarbanes Oxley Act of 2002 and ultimately destroyed Plaintiff's EXPERIAN CREDIT SCORE as corporate retaliation, political retaliation by Senator from Texas named John "Cornhead" Cornyn and government retaliation for destroying a large political donor, and a 75 year old publicly traded company after 9 months of employment with Fleming Companies.

41. PLAINTIFF'S Actions related to the Fleming and K-Mart destruction shows Plaintiff's repeated ethical and lawful behavior when confronted with life altering corporate corruption. Plaintiff lost everything while fighting the Fleming / K-Mart battle and it took Plaintiff until 2007 to just

balance the destruction perpetrated.  Plaintiff's credit score did not recover from the corporate and political attacks.

42. Just as Plaintiff was recovering from the real financial destruction caused by SEC whistleblowing, Plaintiff was forced to report Zale Corporation to the SEC for Securities Fraud after Plaintiff warned Zale Corporation executives to not publish the financials that Plaintiff knew to be pure fraud, in response to and to cover up the results of the C-Suite executives gaslighting each other so hard they lost so much money that this Plaintiff was forced to resign his position as Director of Finance for the $1B Zale brand because his brand suffered no losses under this Plaintiff watch, additionally ½ of the Zale Corp portfolio total top line sales, and, 100% of Zale Brand and Zale Corporate bottom line EBITDA of $114MM +/-  at the time.  Zale is now owned by their largest global competitor in direct result of this Plaintiff's documented corporate kills for SEC violations. The top executive gaslighter, CEO of the world's largest Jewelry retailer, was fired and started selling real estate in Florida…

43. The law firm of MILBERG WEISS BERSHAD HYNES & LERACH LLP The "Meanest Law Firm In America" according to Fortune Magazine's article dated Nov 2006 "The fall of America's meanest law firm Milberg Weiss", "the lawsuit factory that took corporations for $45 billion, is in the feds' cross hairs." "Fortune's Peter Elkind reports on the saga. FORTUNE Magazine By Peter Elkind, Fortune editor-at-large November 3, 2006"

    a.  "Before leaving his law practice in August 2007, Lerach was a partner in the San Diego-based firm Lerach Coughlin Stoia Geller Rudman & Robbins, now known as Robbins Geller Rudman & Dowd. He had founded the firm in 2004 as a spinoff from Milberg Weiss Bershad Hynes & Lerach; the latter firm was subsequently indicted in 2006 for splitting fees with clients in its class action securities lawsuits, a scheme in which Lerach would later plead guilty to have taken part in"

44. The law firm of MILBERG WEISS BERSHAD HYNES & LERACH LLP made $36,000,000 directly related to:

    a.   this Plaintiff's repeated and successful SEC whistleblowing

    b.  "puppet mastering" of the SEC in endless face-to-face meetings with SEC prosecuting attorneys that could barely function due to political pressure and lack of experience enforcing the Law and generalized stupidity / institutional laziness.

    c.  writing/editing of the actual Federal complaints against Fleming Companies resulting in ZERO INCOME TO THIS PLAINTIFF and "credit" destruction that persists today.

**45. In fact, Plaintiff's income and Experian credit score were destroyed on purpose by corporate and political perpetrators… all happily disseminated and broadcast by DEFENDANT EXPERIAN et al, against the Plaintiff and these DEFENDANTS falsely maliciously reported Plaintiff as a credit risk for simply ENFORCING FEDERAL LAW against corporations i.e. political donors, in substantial quantities.**

46. Plaintiff "destroyed" Zale Corporation in 2006 for similar Securities Fraud as Fleming.  Plaintiff to this Causes suffered retaliation from Zale executives, investors, law firms, and judges from their first (known) attack in 2009 to present day… Federal Litigation is being filed to address Zale Corporation's (now Signet) retaliation as they were purchased by their largest global competitor Signet Corp. which will be named in a Federal Complaint related to this and other Federal Complaints.

47. Plaintiff survived Covid 19 in Dallas Texas from December 28, 2019 to January 15, 2020 – Plaintiff almost died of Covid 19 before Covid 19 was a named disease.  The wave of infection in Dallas Texas at that time is well documented and is not in dispute.

48. Plaintiff had adequate credit score for Federal Covid 19 relief before Covid 19 lockdowns and **delayed Federal relief**: by the time the Small Business Administration "SBA" sourced Plaintiff's

credit from Defendant company Experian, the credit report was massively deficient and destroyed

by the lockdowns and destruction of Plaintiff's business not caused by Plaintiff.

49. Plaintiff J Alan Konecny is a resident citizen of Gunnison, Gunnison County, Colorado and owns

a U.S. business registered in Colorado and was repeatedly harmed by Experian.  Plaintiff invested

heavily in his business prior to Covid lockdowns - including a Co-Pack manufacturing facility

pre-covid investment which was forcibly stopped and ultimately destroyed by Covid 19 and US

Government lock downs and related SBA denial of emergency relief and denial of general relief

as due by U.S. law cited herein.

50. Defendant's willful neglect of the Law has caused Plaintiff damages, pain, emotional distress, real

financial harm, and seemingly limitless negative reporting on his credit report during the entire Class

Period.

51. Defendants made false and misleading statements to Plaintiff and to Plaintiff's lending companies and

financial institutions.

52. Defendants, a foreign company, repeatedly violated Plaintiff's Civil Rights, the Foundation of American

Democracy, after repeated attempts by the Plaintiff to correct the harmful data being monetized by the

Defendants and repeatedly commercialized for massive profits.

**SCIENTER AND SCHEME ALLEGATIONS**

53. The statement "PLAINTIFF DESTROYS CORPORATIONS FOR SECURITIES FRAUD" is true, and

this fact is well documented and as a result, negative reporting on Plaintiff's credit report is impossible

to remove due to judicial, political, and corporate corruption and well documented attacks now being

litigated in Federal Court.

54. Plaintiff has filed Federal Complaints to address all co-conspirator attacks upon Plaintiff in direct

retaliation to Plaintiff's corporate SEC law enforcement including Senator John "Cornhead" Cornyn

from Texas for her cover-up of the pervasive corporate corruption in Texas circa 2002 i.e. ENRON, FLEMING etc. that destroyed Plaintiff's EXPERIAN "Credit Score" to this day.

55. Plaintiff's Experian credit score is the exact graphical curve as the Dow Jones from 2002 to present – with marked differences in Dow Jones positive "recovery bounces" and Dow Jones true positive recovery trends that the Plaintiff of this Complaint does not experience for years after the DOW JONES AND US Stock Market recovers. The Plaintiff only recovers after politically connected financial recessions and SEC corporate corruption related down turns when, and only after, Wall Street is made whole with taxpayer time, effort, and money constituting ACTIONABLE ENFORCEMENT both CIVIL AND CRIMINAL by this Plaintiff.

56. Plaintiff demands DEFENDANTS cease and desist their RICO operations that harm Plaintiff and all other similarly situated.

57. Plaintiff submits by reference FLEMING COMPANIES, INC. CLASS ACTION 2002 in the United States District Court Eastern District of Texas Texarkana Division, which was written, in-part, by the Plaintiff to this Federal Complaint.

58. Plaintiff submits by reference 23-CV-03202 a Federal Complaint subtitled against "the judges" that willfully perpetrated crimes and torts against this Plaintiff for personal gain and / or to prevent loss of political funding and loss of election related government employment.

59. Defendant(s) made false and misleading statements to Plaintiff and Plaintiff's Financial Institutions, SBA, employers, customers, and lending institutions / businesses and profited from disseminating, broadcasting, and selling false information regarding Plaintiff, Plaintiff's Character, and Plaintiff's Abilities.

60. Plaintiff was ridiculed and harassed by SBA staff and representatives due to the Defendant's incorrect financial reporting, credit reporting, and character reporting to the US Government.

61. Plaintiff submits by reference Federal Case No. 23-CV-03214 Plaintiff's litigation against the (SBA) US Small Business Administration.

62. Plaintiff was refused emergency SBA relief and was ignored by the SBA regarding Plaintiff's requests for emergency relief since March 2020 because of Experian's incorrect credit reporting and was ultimately denied SBA Covid 19 relief at no fault of Plaintiff because of Defendant's fraudulent malicious reporting for profit.

63. Plaintiff submits by reference Civil Case No. 23-CV-03047 related to credit reporting threats and actual credit destruction related to health care providers that can't or won't bill the Veterans Affairs Dept (VA) for Plaintiff's Veteran benefits. VA benefits that were not used or activated by Plaintiff until after Covid 19 pandemic due to total financial destruction related to this and associated by reference Federal Complaints.

64. Plaintiff and plaintiff's brand development business were first-wave-destroyed by SARv2COVID19, had negative impacts to credit, and suffered retracted income related to the pandemic before most others and had NO CREDIT REPORT PROVIDED BY DEFENDANT when Plaintiff demanded corrections and modifications to Plaintiff's credit report immediately to prevent further harm to Plaintiff... Defendant's "PAID BACK" Plaintiff by refusing to issue a credit score during Covid 19 pandemic completely paralyzing Plaintiff and Plaintiff's business. The "social control function" of the Experian's algorithms has been exposed and will be analyzed in a Public forum during Discovery – Discovery lawfully due Plaintiff.

65. Plaintiff was then punished by the SBA under old, PRE-Pandemic SBA rules SBA case # 2000424611 - because of being first victim with no Government Solution available, and still suffers the same TODAY 12-6-23.

66. The SBA approved a small business loan for the Plaintiff and then denied the loan based on Experian's incorrect credit reporting repeatedly, for the entire duration of the Pandemic, falling below "620" 1.5

years into the locks downs and financial destruction orchestrated by corporate, judicial, and political corruption (to be addressed in separate litigation).

67. A separate CLASS ACTION is being filed in conjunction with this FEDERAL COMPLAINT.

## VIOLATIONS of THE CIVIL RIGHTS ACT of 1964

68. Plaintiff was ridiculed and harassed by SBA staff because the SBA purchased incorrect data from Experian.

69. Defendants failed to train their new employees Federal Discrimination Laws and Defendant's failed to train employees / representatives responsible communication standards for Disabled Veterans.  SBA employees and representatives harassed and blamed Plaintiff for the uncontrollable realities of SARv2COVID19.

70. Defendants discriminated against Plaintiff in direct violation of Title VI of The Civil Rights Act of 1964.

## VIOLATIONS of AMERICANS WITH DISABILITIES ACT of 1990

14. Plaintiff requires the remedies provided in above listed Titles to compensate for the Crime(s) and Torts by the Defendants outlined within.

15. Plaintiff incorporates by reference ¶¶ 1-181.

16. Each of the defendants: (a) knew or had access to the material non-public information about this Complaint.

17. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

18. Defendants violated **above listed Law** in that they:

a.  Employed devices, schemes, and artifices to defraud and deny Plaintiff his Civil Rights

b.  Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.  Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and the resulting "legal" process.

d.  "Also known as racketeer influenced and corrupt organizations (RICO)," is one of the most sweeping statutes ever passed by congress, incorporating by reference 24 separate types of federal crimes and eight types of state felonies. While not creating a new type of substantive crime, RICO declares that any individual committing any two of a variety of specified offenses is guilty of 'racketeering activity' and is subject to severe penalties.

e.  A close scrutiny of RICO's language and legislative history shows that RICO proscribes specific activities rather than the status of being involved in organized crime.

f.  Two key elements necessary to obtaining a conviction under RICO are a 'pattern of racketeering activity' – which has been detailed in this Federal Complaint and the existence of an 'enterprise' with which the individual has some connection - which in this case is the Collin County and the Tarrant County Texas Republican Party and The Texas State Bar Association. Interpretation of these elements by the courts has broadened the scope of RICO to include even those acts which are so closely linked as to constitute a single transaction and to apply to illegal enterprises, governmental units, foreign corporations, and individuals.

g.  There are three penalties for violation of RICO, all of which may be used simultaneously. These include a significant financial penalty/ fine, imprisonment for no more than 20 years, and forfeiture of any interest acquired or maintained through violation of the statute. These penalties are severe, and in many cases exceed the penalties for the individual crimes underlying the RICO violation.  Plaintiff seeks all possible restitution under RICO - to include the incarceration of these CRIMINAL DEFENDANTS for 19.9 years.

h.  RICO has provision for civil remedies and discovery modeled after antitrust laws that Plaintiff demands this Court provide total and complete access to all RICO provisions and civil remedies with unlimited DISCOVERY.

19. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendant(s) and willfully executed by Defendants.

71. The Americans with Disabilities Act (ADA) is a federal civil rights law that prohibits discrimination against people with disabilities. Organizations that provide services to the public are covered by the ADA.  The ADA requires that entities provide full and equal access for people with disabilities.  This can be done through: "Reasonable Modifications of Policies, Practices, and Procedures. Adjusting policies, practices, and procedures, if needed, to provide goods, services, facilities, privileges, advantages, or accommodations.  Effective Communication.  Making communication, in all forms, easily understood. Accessible Facilities.

72. Plaintiffs are responsible under Title II of the ADA for the problems created for the Plaintiff. All places covered by the ADA must provide access to their facilities and programs for people with disabilities.

73. A person with a disability can be a person with a mobility or physical disability, sensory (vision or hearing), intellectual, psychiatric, or other mental disability.

74. Plaintiff is a Disabled Veteran protected by the Americans with Disabilities Act protections and demands restitution for the abuse AND violations of the Americans with Disabilities Act by Experian and Defendants.

75. Defendants Failed to make Reasonable Modifications of Policies, Practices, and Procedures and failed to train Experian staff, contractors, on the American with Disabilities Act application and personal legal responsibility.

76. In 1990, finding that discrimination against individuals with disabilities persists, Congress passed the Americans Disabilities Act (ADA). Congress included the remedies provided in Title VII of the Civil Rights Act of 1964 (1964 CRA) to enforce the ADA.

## FIRST CLAIM FOR RELIEF

**For Violation of The Consumer Protection Act of 2010 And Violation Of The Civil Rights Act of 1964 And Violation of The Americans With Disabilities Act of 1990 And For Violation of 15 USC 1681 And 15 USC 1692 And For Violation of Sarbanes Oxley Act of 2002 And For Violation of Dodd-Frank Wall Street Reform Act 2010 And For Violation of The Consumer Protection Act of 2010 And For Violation of Economic Security (Cares) Act Of 2020 And For Violation Of The Coronavirus Response And Consolidated Appropriations Act of 2021**

### Against All Defendants

77. Plaintiff requires the remedies provided in Title VII of the Civil Rights Act of 1964 (1964 CRA) and the Consumer Protection Act of 2010 and Title VI of the Civil Rights Act of 1964 and American's with Disabilities Act of 1990 and 15 USC 1681 and 15 USC 1692 and Sarbanes Oxley Act of 2002 and relief provided by Dodd-Frank Wall Street Reform Act 2010 and the Consumer Protection Act of 2010 and Economic Security (cares) Act of 2020 and the Coronavirus Response and Consolidated Appropriations Act of 2021 to compensate for the crimes and incorrect information distributed for profit, by the Defendants, outlined within.

78. Plaintiff incorporates by reference ¶¶ 1-76.

79. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

80. Defendants violated CARES Act of 2020 and

     ix.  Employed devices, schemes, and artifices to defraud.

     x.  Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

     xi.  Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection with EMERGENCY RELIEF SBA activity and other activity throughout the class period.

81. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

82. By reason of such wrongful conduct, the Individual Defendants and Experian are liable pursuant to CARES ACT as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of the SBA, Experian and financial institutions caused by Experian's incorrect reporting.

83. Plaintiff prays for relief from the schemes and harassment outlined.

84. Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF

85. Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits (EXHIBITS) be reviewed In Camera, Plaintiff incorporates by reference all attached, (EXHIBITS).

86. Plaintiff prays for such other relief to which Plaintiff may be justly entitled.

87. Damages which include pain, suffering, anguish, intentionally inflicted harm.

88. Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

89. Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

90. Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

91. Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

92. Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

93. Plaintiff prays for general relief and safety.

## SECOND CLAIM FOR RELIEF

**For Violation Of The Consumer Protection Act Of 2010 And Violation Of The Civil Rights Act of 1964 And Violation of The Americans With Disabilities Act of 1990 And For Violation of 15 USC 1681 And 15 USC 1692 And For Violation of Dodd-Frank Wall Street Reform Act 2010 And For Violation of The Consumer Protection Act of 2010 And For Violation Of Economic Security (Cares) Act of 2020 And For Violation of The Coronavirus Response And Consolidated Appropriations Act of 2021**

**Against All Defendants**

94. In 1990, finding that discrimination against individuals with disabilities persists in such critical areas as Credit Reporting, Congress passed the Americans Disabilities Act (ADA). Congress included the remedies provided in Title VII of the Civil Rights Act of 1964 (1964 CRA) to enforce the ADA.

95. Plaintiff incorporates by reference ¶¶ 1-93.

96. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

97. Defendants violated CARES Act of 2020 and

xii. Employed devices, schemes, and artifices to defraud.

xiii. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

xiv. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection with "EMERGENCY RELIEF" SBA activity.

98. Plaintiff has suffered damages related to the policies and procedures conspired by the by Experian employees, representatives, contractors, and affiliates.

99. By reason of such wrongful conduct, the Individual Defendants and Experian are liable pursuant to CARES ACT as cited herein and as direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Experian et al.

100. Plaintiff prays for relief from the schemes and harassment outlined.

101. Plaintiff prays for swift relief as required by Federal Law.

102.    Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates all by reference.

103.    Plaintiff prays for such other relief to which Plaintiff may be justly entitled.

104.    Damages which include pain, suffering, anguish, intentionally inflicted harm.

105.    Exemplary Damages: The conduct committed by Defendant(s) against Plaintiff is the type of conduct evidencing actual malice on Defendant(s) part that allows the imposition of exemplary damages.  Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

106.    Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition.

107.    Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

108.    Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

109.    Plaintiff prays for fees, expenses, costs, loss of income and all legal fees.

110.    Plaintiff prays for general relief and safety.

### THIRD CLAIM FOR RELIEF

**For Violation Of Racketeer Influenced And Corrupt Organizations**

**18 USC Section 1961-68**

**Against All Defendants**

111. Plaintiff requires the remedies provided in above listed Titles to compensate for the Crime(s) and Torts by the Defendants outlined within.

112.    Plaintiff incorporates by reference ¶¶ 1-110.

113.    Each of the defendants: (a) knew or had access to the material non-public information about this Complaint.

114.    Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

115.    Defendants violated **above listed Law** in that they:

    i.    Employed devices, schemes, and artifices to defraud and deny Plaintiff his Civil Rights

    j.    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    k.    Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and the resulting "legal" process.

    l.    "Also known as racketeer influenced and corrupt organizations (RICO)," is one of the most sweeping statutes ever passed by congress, incorporating by reference 24 separate types of federal crimes and eight types of state felonies. While not creating a new type of substantive crime, RICO declares that any individual committing any two of a variety of specified offenses is guilty of 'racketeering activity' and is subject to severe penalties.

    m.    A close scrutiny of RICO's language and legislative history shows that RICO proscribes specific activities rather than the status of being involved in organized crime.

n. Two key elements necessary to obtaining a conviction under RICO are a 'pattern of racketeering activity' – which has been detailed in this Federal Complaint and the existence of an 'enterprise' with which the individual has some connection - which in this case is the Collin County and the Tarrant County Texas Republican Party and The Texas State Bar Association. Interpretation of these elements by the courts has broadened the scope of RICO to include even those acts which are so closely linked as to constitute a single transaction and to apply to illegal enterprises, governmental units, foreign corporations, and individuals.

o. There are three penalties for violation of RICO, all of which may be used simultaneously. These include a significant financial penalty/ fine, imprisonment for no more than 20 years, and forfeiture of any interest acquired or maintained through violation of the statute. These penalties are severe, and in many cases exceed the penalties for the individual crimes underlying the RICO violation. Plaintiff seeks all possible restitution under RICO - to include the incarceration of these CRIMINAL DEFENDANTS for 19.9 years.

p. RICO has provision for civil remedies and discovery modeled after antitrust laws that Plaintiff demands this Court provide total and complete access to all RICO provisions and civil remedies with unlimited DISCOVERY.

116. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendant(s) and willfully executed by Defendants.

117. "Also known as racketeer influenced and corrupt organizations (RICO)," is one of the most sweeping statutes ever passed by congress, incorporating by reference 24 separate types of federal crimes and eight types of state felonies. While not creating a new type of substantive crime, RICO

declares that any individual committing any two of a variety of specified offenses is guilty of 'racketeering activity' and is subject to severe penalties.

    **i.** A close scrutiny of RICO's language and legislative history shows that RICO proscribes specific activities rather than the status of being involved in organized crime.

    **ii.** Two key elements necessary to obtaining a conviction under RICO are a 'pattern of racketeering activity' – which has been detailed in this Federal Complaint and the existence of an 'enterprise' with which the individual has some connection. Interpretation of these elements by the courts has broadened the scope of RICO to include even those acts which are so closely linked as to constitute a single transaction and to apply to illegal enterprises, **governmental units**, **foreign corporations, and individuals.**

    iii. There are three penalties for violation of RICO, all of which may be used simultaneously. These include a significant financial penalty/ fine, imprisonment for no more than 20 years, and forfeiture of any interest acquired or maintained through violation of the statute. These penalties are severe, and in many cases exceed the penalties for the individual crimes underlying the RICO violation. Plaintiff seeks all possible restitution under RICO - to include the incarceration of these CRIMINAL DEFENDANTS for 19.9 years.

    iv. RICO has provision for civil remedies and discovery modeled after antitrust laws that Plaintiff demands this Court provide total and complete access to all RICO provisions and civil remedies with **<u>unlimited DISCOVERY.</u>**

v.  Plaintiff requests unlimited Discovery to be ordered and enforced upon the Defendants for the purpose of crime and tort prevention and prosecution of these crimes.

## FOURTH CLAIM FOR RELIEF

### For Violation of Sarbanes Oxley Act of 2002

### For Violation of Dodd-Frank Wall Street Reform Act 2010

### For Violation of The Consumer Protection Act of 2010

### For Violation of Economic Security (CARES) Act of 2020

### For Violation of The Coronavirus Response And Consolidated Appropriations Act 2021

### For Willful Tortious Interference of A Contract Resulting In Injuries

### Against All Defendants

118. Plaintiff requires the remedies provided in above listed Titles to compensate for the Crime(s) and Torts by the Defendants outlined within.

119.    Plaintiff incorporates by reference ¶¶ 1-117.

120.    Each of the defendants: (a) knew or had access to the material non-public information about this Complaint.

121.    Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

122.    Defendants violated **above listed Law** in that they:

q.  Employed devices, schemes, and artifices to defraud and deny Plaintiff his Civil Rights

r.  Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

s.  Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and the resulting "legal" process.

t.  "Also known as racketeer influenced and corrupt organizations (RICO)," is one of the most sweeping statutes ever passed by congress, incorporating by reference 24 separate types of federal crimes and eight types of state felonies. While not creating a new type of substantive crime, RICO declares that any individual committing any two of a variety of specified offenses is guilty of 'racketeering activity' and is subject to severe penalties.

u.  A close scrutiny of RICO's language and legislative history shows that RICO proscribes specific activities rather than the status of being involved in organized crime.

v.  Two key elements necessary to obtaining a conviction under RICO are a 'pattern of racketeering activity' – which has been detailed in this Federal Complaint and the existence of an 'enterprise' with which the individual has some connection - which in this case is the Collin County and the Tarrant County Texas Republican Party and The Texas State Bar Association. Interpretation of these elements by the courts has broadened the scope of RICO to include even those acts which are so closely linked as to constitute a single transaction and to apply to illegal enterprises, governmental units, foreign corporations, and individuals.

w.  There are three penalties for violation of RICO, all of which may be used simultaneously. These include a significant financial penalty/ fine,

imprisonment for no more than 20 years, and forfeiture of any interest acquired or maintained through violation of the statute. These penalties are severe, and in many cases exceed the penalties for the individual crimes underlying the RICO violation.  Plaintiff seeks all possible restitution under RICO - to include the incarceration of these CRIMINAL DEFENDANTS for 19.9 years.

    x.  RICO has provision for civil remedies and discovery modeled after antitrust laws that Plaintiff demands this Court provide total and complete access to all RICO provisions and civil remedies with unlimited DISCOVERY.

123.    Plaintiff has suffered damages related to the policies and procedures conspired by the Defendant(s) and willfully executed by Defendants.

124.    By reason of such wrongful conduct, the Individual Defendants and State of Texas and Collin County Texas are liable pursuant Title Vi of The Civil Rights Act Of 1964.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper legal mistreatment received at Collin County Texas Court and Tarrant County Court and by all Defendants as named above.

125.    Plaintiff prays for relief from the schemes and harassment outlined.

126.    Plaintiff prays for swift relief as required by Federal Law.

127.    Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits (EXHIBITS 2002-2022 pages 1 - 453) be reviewed In Camera, Plaintiff incorporates by reference all attached, (EXHIBITS 2002 - 2022).

128.    Plaintiff prays for such other relief to which Plaintiff may be justly entitled.

129.    Damages which include pain, suffering, anguish, intentionally inflicted harm.

130.    Exemplary Damages: The conduct committed by Defendant(s) against Plaintiff is the type of conduct evidencing actual malice on Defendant(s) part that allows the imposition of exemplary

damages.  Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

131.    Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition.

132.    Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

133.    Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

134.    Plaintiff prays for fees, expenses, costs, loss of income and all legal fees.

135.    Plaintiff prays for general relief and safety.

## FIFTH CLAIM FOR RELIEF

## FOR VIOLATION of TITLE 18 U.S. CODE § 2261A FEDERAL STALKING LAWS

136.  Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

137.  Plaintiff incorporates by reference ¶¶ 1-135

138.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

139.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts,

practices and a course of business that operated as a fraud or deceit upon plaintiff in connection

Plaintiff's work and development activity and other activity throughout the period.

140.  Plaintiff has suffered damages related to the policies and procedures conspired by the

Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

141.  By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable

pursuant to Federal Law as cited herein and as direct and proximate result of these defendants'

wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of

Defendants.

142.  Plaintiff prays for relief from the schemes and harassment outlined.

143.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests

DECLARATORY AND INJUNCTIVE RELIEF.

144.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits

be reviewed In Camera, Plaintiff incorporates by reference all attached.

145.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages

which include pain, suffering, anguish, intentionally inflicted harm.

146.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of

conduct evidencing actual malice on Defendants part that allows the imposition of exemplary

damages.  Plaintiff additionally brings this suit for these damages, which exceed the minimum

jurisdictional limits of State court.

147.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant

injunctions, enforcement, sanctions, and all other relief requested in this petition as well as

DECLARATORY AND INJUNCTIVE RELIEF.

148.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s),

in conformity with the allegations of this petition, from the acts set forth above.

149.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

150.  Plaintiff prays for fees, expenses, costs, loss of income; and all legal fees at a rate of $250 per hour billed full hour only at 21 years at 2081 hours per year or 43,701 hours at filing of this Complaint or $10,925,250.

151.  Plaintiff prays for general relief and safety.

## SIXTH CLAIM FOR RELIEF

## FOR CRIMINAL ATTEMPT, CONSPIRACY, AND AIDING AND ABETTING

152.  Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

153.  Plaintiff incorporates by reference ¶¶ 1-151

154.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

155.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

156.  Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

157.  By reason of such wrongful conduct, the Individual Defendants are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

158.  Plaintiff prays for relief from the schemes and harassment outlined.

159.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

160.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

161.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

162.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages.  Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

163.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

164.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

165.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

166.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

167.  Plaintiff prays for general relief and safety.

## PETITION (PRAYER)

168.  WHEREFORE, Plaintiff prays for judgement as follows: declaring this action to be proper
action, awarding damages, including interest; and such relief as the Court may deem proper.

169.  Plaintiff prays that the citation and notice issued as required by law and that the Court grant
injunctions, enforcement, sanctions, and all other relief requested in this Petition.

170.  Plaintiff prays that, on final hearing, the Court enter a permanent injunction enjoining
Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

171.  Plaintiff prays for judgment against all Defendant(s)s in the sum exceeding $75,000,001 and the
minimum jurisdictional limits of this court for Plaintiff's actual damages as alleged, for
exemplary damages, for loss of income $51,400,011, for loss of related assets $49,494,333, for
costs of court, and for general relief and relief the Court may deem proper.

172.  Plaintiff prays for litigation preparation fees of $250 per hour, interest, expenses, and costs as
requested at 25,000 hours or 1136 hours per year for 22 years or $6,250,000 USD.

173.  The Court is requested to make all other and further orders that are pleaded for or that are
deemed necessary for the complete safety and financial stability of the Plaintiff.

174.  Plaintiff seeks relief, relief from continued and experienced crimes and torts, premeditated and
aggressively perpetrated to include but not limited to:

   a.  Violation(s) of 18 U.S. Code Attempt and conspiracy

   b.  Violation(s) of 18 U.S. Code Federal Stalking Law

   c.  Violation(s) of 18 U.S. Code Interstate Coercion And Enticement

   d.  With Criminal Attempt, Conspiracy, & Aiding and Abetting

   e.  Violation(s) of 42 U.S. Code Americans With Disabilities Act of 1990

   f.  Violation(s) of Title The Civil Rights Act of 1964

175.    WHEREFORE, Plaintiff prays for judgement as follows: declaring this action to be proper action, awarding damages, including interest; and such relief as the Court may deem proper.

176.    Plaintiff prays that the citation and notice issued as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this Petition.

177.    Plaintiff prays that, on final hearing, the Court enter a permanent injunction enjoining Defendant(s)s, in conformity with the allegations of this petition, from the acts set forth above.

178.    Plaintiff prays for judgment against all Defendant(s)s in the sum exceeding the minimum jurisdictional limits of this court for his actual damages as alleged, for exemplary damages, for loss of income, for loss of related assets, for costs of court, and for general relief and relief the Court may deem proper.

179.    Plaintiff prays for attorney's fees, interest, expenses, and costs as requested.

180.    The Court is requested to make all other and further orders that are pleaded for or that are deemed necessary for the complete safety and financial stability of the Plaintiff

### JURY DEMAND

181.  **Plaintiff demands a trial by jury.** The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654 and The Seventh Amendment to the U.S. Constitution ensures that citizens' civil cases can be heard and decided upon by a jury. The jury trial provides a forum for all the facts to be presented, evaluated impartially, and judged according to the law.

DATED: December 7, 2023
Submitted,
J. Alan Konecny
125 W. Virginia Ave, # 265
Gunnison, CO. 81230
Tel: 970-452-9378
alan@branddevelopmentpartners.com
By:  /S/ J. Alan Konecny
J. Alan Konecny
Plaintiff
Pro Se

Page 53 of 54

## Cc LIST

182. United States Federal Trade Commission
183. United States Department of Commerce
184. United States Federal Court, Denver Colorado
185. United States Department of Justice
186. SolveForY.org Public Benefit Corporation
187. JackassParrot.com
188. NunsAndClowns.com
189. Office of the Attorney General Colorado Department of Law Ralph L. Carr Judicial Building 1300 Broadway, 10th Floor Denver, CO 80203 (720) 508-6000

### CERTIFICATE of SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Rules of Civil Procedure by a <u>FEDERAL MARSHAL</u> on or about DECEMBER 7, 2023, and by electronic service via Defendant's email server / email address as outlined herein.

This court has been requested to and is responsible for serving all plaintiff litigation to defendants by federal marshal to be compliant with THE AMERICANS WITH DISABILITIES ACT "ADA" and THE UNITED STATES FEDERAL RULES of CIVIL PROCEDURE and the right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654.

According to https://www.usmarshals.gov/what-we-do/service-of-process "Service of Process"

"For the service of any process, the form "USMS-285" is utilized by the U.S. Marshals Service and Federal Court. One complete set of this form (USM-285) and one copy of each writ for each individual, company, corporation, etc., to be served or property to be seized or condemned must be submitted."

Plaintiff has submitted form USM-285 for each Defendant.

"PLAINTIFF'S MOTION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS AND TO PROCEED IN FORMA PAUPERIS" has been filed with this Court.

**The acts giving rise to this complaint have left Plaintiff unable to pay Service of Process Fees or Court Costs.**

/S/ J. Alan Konecny
J. Alan Konecny
Plaintiff
Pro Se